IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN RANDALL MASSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 11-00604-N |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

ORDER

Plaintiff John R. Massey ("Massey") filed this action seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") that he was not entitled to Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381-1383c. Pursuant to the consent of the parties (doc. 20), this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R.Civ.P. 73. *See* Doc. 21. The parties' joint motion to waive oral arguments (doc. 19) was granted on September 19, 2012 (doc. 22). Upon consideration of the administrative record (doc. 14) and the parties' respective briefs (docs. 15 and 17), the undersigned concludes that the decision of the Commissioner is due to be **AFFIRMED**.

I.  Procedural History.

Plaintiff John R. Massey filed an application disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (the Act),

42 U.S.C. §§ 401-433 and 1381-1383c, on May 21, 2009 (Tr. 129).  Massey claimed disability beginning January 2, 2009 (Tr. 129-131), due to emphysema, chronic obstructive pulmonary disease (COPD), and acid reflux (Tr. 143).[1]  Massey was fifty-one years old at the time he filed his application (Tr. 183).  The application was denied on August 10, 2009. (Tr. 62-66).  Massey requested a hearing on August 9, 2009 (Tr. 68-69) before an Administrative Law Judge ("ALJ").  A hearing was held on September 3, 2010.  (Tr. 29-59).  The ALJ issued an unfavorable decision on September 14, 2010.  (Tr. 12-28).  Massey requested a review by the Appeals Council which was denied on August 30, 2011 (Tr. 1-5), thereby making the ALJ's decision the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981 (2009).[2]  Massey has exhausted all his administrative remedies and now appeals from that final decision.

  II.  Claims on Appeal.

  1.  Whether the ALJ's finding that Massey can perform less than a full range of light work is supported by substantial evidence.

  2.  Whether the ALJ erred by failing to properly evaluate Massey's subjective complaints.

  III.  Standard of Review.

    A.  Scope of Judicial Review.

---

[1] Massey's application for disability insurance benefits was omitted from the administrative record.  (Doc. 17 at n. 1).

[2] All references to the Code of Federal Regulations (C.F.R.) are to the 2011 edition.  Also, all references are to Part 404 of the regulations, which addresses claims under Title II of the Act. All of the cited regulations have parallel citations in Part 416 of the regulations, which addresses claims under Title XVI of the Act.

In reviewing claims brought under the Social Security Act, this Court's role is a limited one. Specifically, the Court's review is limited to determining: 1) whether the decision is supported by substantial evidence, and 2) whether the correct legal standards were applied. *See*, 42 U.S.C. § 405(g); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Thus, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996); Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Chater, 84 F.3d at 1400; Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991). *See also*, Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[ ]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Lynch v. Astrue, 358 Fed.Appx. 83, 86 (11th Cir. 2009); Martino v. Barnhart, 2002 WL 32881075, * 1 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is

substantially supportive evidence" of the ALJ's decision. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

    B.  Statutory and Regulatory Framework.

  The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. Patterson v. Bowen, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010). The Eleventh Circuit has described the evaluation to include the following sequence of determinations:

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). *See also* Bell v. Astrue, 2012 WL 2031976, *2 (N.D. Ala. May 31, 2012); Huntley v. Astrue, 2012 WL 135591, *1 (M.D. Ala. Jan. 17, 2012).

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

The burden of proof rests on a claimant through Step 4. *See* Phillips v. Barnhart, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a *prima facie* case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. Id. It also can contain both exertional and nonexertional limitations. *Id*. at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P, app. 2 ("grids"), or hear testimony from a vocational expert (VE). *Id.* at 1239–40.

IV.   Relevant Facts.

1.   Massey's vocational background.

Massey was born on November 3, 1958. (Tr. 129). He was 50 years old on the alleged disability onset date of January 2, 2009 (Tr. 23), and 52 years old on September 14, 2010, when the ALJ issued his unfavorable decision (Tr. 24). He completed the 10th grade (Tr. 37), and last worked August through December of 2008 when he was "trying car sales." (Tr. 38-39). Massey previously operated his own dump truck but stopped

when he went bankrupt. (Tr. 39-40). Prior to that, Massey worked for 15 years assembling scaffolding "mostly in ships or . . . bridges." (Tr. 40)[4]. In connection with this job, Massey operated cranes (Tr. 41) and was a supervisor (Tr. 55). He left this job when there was "no work." (Tr. 40).

2. Massey's Testimony.

Massey testified that he was 51, divorced, and lived with his sister (Tr. 36). He testified that he had not looked for work since the onset date of January 2009 (Tr. 41) and that he was unable to work because walking caused him to experience difficulty breathing (Tr. 43). Massey admitted, however, that he had not experienced any complications from his heart surgery in January 2010 (Tr. 17, 19, 44). He said he could walk for three to four minutes before needing to catch his breath, but said that he had no limitations in sitting or standing (Tr. 46). He also indicated that he could lift 30 pounds, but not regularly (Tr. 46-47).

3. Medical Evidence.

In December 2008, Massey complained of shortness of breath and an x-ray of his chest showed "some fibrotic changes at the bilateral lung bases", but no other acute changes (Tr. 208). An x-ray taken on April 1, 2009, of Massey's chest showed a possible mass in his right lung, and diffuse emphysematous changes in both lungs (Tr. 247). Pulmonary function studies conducted the same day revealed a baseline FVC level of 5.01 which represents 87% of the predicted result and a baseline $FVC_1$ level of 2.86,

---

[4] The Vocational Expert referred to this job as a "construction rigger." (Tr. 55).

which represents 64% of the predicted result. (Tr. 233). Following use of a bronchodilator, Massey had a FVC level of 4.85 representing a change of -3% and a FEV1 level of 3.08, representing a change of 8%. (Tr. 233). Based on these test results, Massey was diagnosed with "mild [pulmonary] obstruction." (Tr. 233, 234).

On May 6, 2009, a Respiratory Therapist diagnosed Massey with "moderate COPD" (Chronic Obstructive Pulmonary Disease) and noted the medication then prescribed. (Tr. 246). On July 24, 2009, Dr. F. D. Salter wrote a letter "To Whom It May Concern" stating that "Mr. Massey is under my care for lung disease that has rendered him unable to work." (Tr. 243, 248). On September 11, 2009, Dr. Robert Lightfoot examined Massey, reported normal breath sounds and no respiratory distress, and discussed Massey's efforts to quit smoking with the assistance of a prescribed medication, Chantrix. (Tr. 251-252). On December 1, 2009, a physical examination revealed that, although Massey was experiencing chest pain, his COPD was reported to be "better." (Tr. 250).[5] On December 4, 2009, M. Wail Hashimi, MD, wrote to Dr. Lightfoot concerning the referral of Massey for evaluation of his chest pain and reported:

> It is my understanding that Mr. Massey saw you for chest discomforts. He reports that several nights ago he had an episode of severe chest pain that radiated down his left arm and up into his neck. It awoke him from sleep and lasted for approximately 15 minutes. He had recurrence of the symptoms one night later. Since then he has not had further symptoms. Normal levels of exertion, however, has not provoked any chest discomforts, however, going up 2-3 flights of stairs occasionally gets him short of breath and possible chest pain. . . . His blood pressure in the office today was 142/90. His exam is otherwise unremarkable.

---

[5] This assessment indicates that the examination was also conducted by Dr. Lightfoot, but was unsigned. (Tr. 250).

8

> I have recommended to him that we go ahead and begin treatment for hypertension and will start him on Norvast. . . . I am going to schedule him for a Cardiolite stress test and an echo.

(Tr. 257).

On December 29, 2009, F.D. Salter, M.D completed a COPD form and opined that Massey was unable to "work 8 hours per day, 40 hours per weeks on a sustained productive basis, without missing more than two days of work per month due to [his] condition." (Tr. 262). Dr. Salter stated that he foresaw Massey requiring oxygen within the next year and "eventually $O_2$ dependence." (Tr. 262). Dr. Salter's opinion referenced only unspecified "Resp[iratory] Therapy Reports." (Tr. 262).

On January 15, 2010, Massey presented to Providence Hospital complaining of chest pain (Tr. 264). Cardiac catherization revealed significant left anterior cardiovascular disease and coronary artery bypass surgery was recommended (Tr. 285, 317). Shaf Holden, M.D., performed the surgery on January 15, 2010 (Tr. 312-314)[6]. In his discharge summary, signed on February 2, 2010, Dr. Holden reported that Massey

---

[6] In his operative report, Dr. Holden stated that the following history of Massey's chest pain indicated the need for the operation performed:

> Mr. Massey is a 51 year-old white male who for the past 5 weeks has noticed chest pain radiating to his left arm and neck associated with some diaphoresis. Otherwise, he is asymptomatic. He had no exacerbating or relieving factors. The pain was relatively random at times, lasting from 3 minutes to 30 minutes and becoming more frequent recently. He did have a stress test, which was positive, and was scheduled to follow up but unfortunately has an episode of chest pain that awoke him from sleep and prompted him to go to the emergency room, at which time he was admitted and had a coronary angiogram, which showed his right coronary to be normal. [Test results omitted]. We were asked to see him with regard to coronary artery bypass graft. He was informed of the risks and benefits of operation and agreed to proceed.

(Tr. 312-313).

9

was "discharged home in fair condition with good Prognosis." (Tr. 287).  At a follow-up appointment with Cardiology Associates on March 3, 2010, Massey was reported to have no complaints, chest pain, or dyspnea (Tr. 333). He had stopped smoking by that time (Tr. 333). Massey had clear and normal respiration, and a cardiovascular examination revealed no abnormalities(Tr. 333). He was instructed to follow-up in 4 weeks (Tr. 333), but no records have been proffered which show that he complied.

The record indicates that Massey next presented for examination in July, 2010. (Doc. 358).  In a letter dated July 30, 2010, Dr. Hashimi, stated:

> It is my understanding that [Massey] is applying for disability.  Mr. Massey has known coronary disease and has undergone coronary bypass grafting.  In addition to this, he also has problems with high blood pressure and abnormal cholesterol.  He is being treated with multiple medications for his high blood pressure, as well as for his cholesterol problems.
>
> Because of his underlying lung disease, in association with the heart disease that he has, it is my opinion that he is disabled from being able to do any sort of ***strenuous physical activity***.

(Tr. 355, emphasis added).  At his appointment on July 30, 2010, Massey's blood pressure was 132/86, his respirations were normal and non-labored, and his cardiac examination was normal in all respects (Tr. 358).  Massey reported no chest pain or other complaints (Tr. 358).  Neither the medical records nor Dr. Hashimi's correspondence indicates that any specific physical limitations were ever imposed or that any aspect of Massey's physical functional capacity was ever evaluated.

       3.       Medical Evidence Submitted to Appeals Council.[7]

On November 8, 2010, Dr. Hashimi completed a "Heart Questionnaire" in which he indicated that Massey's "symptoms [were] due more to severe lung disease than [to] heart [problems]." (Tr. 359). Dr. Hashimi did not specify any specific functional limitations, although he did select the option concerning the significance of fatigue which indicated that Massey's fatigue "is present to such an extent as to be distracting to adequate performance of daily activities or work." (Tr. 359).[8] Dr. Hashimi conceded that he did not know either the extent to which physical activity such as walking or standing increased Massey's fatigue or forced Massey to "recline or nap during the day," if at all. (Tr. 360).

       4.       Vocational Expert's Testimony.

Sue Berthaume, the Vocational Expert, testified that Massey's past relevant work as an automobile salesman was skilled and of light exertion; as a construction rigger was semi-skilled and of heavy exertion; as a construction rigger supervisor was skilled and of medium exertion; and as a dump truck driver was semi-skilled and of medium exertion. (Tr. 55). The ALJ then posed a hypothetical question based on a person who could perform light work; could walk for no more than 15 minutes at one time; had no limitations in sitting or standing; could perform no climbing; and could not work around

---

[7] The Appeals Council found that this new evidence did not provide a basis for changing the ALJ's decision denying Plaintiff's application for disability benefits (Tr. 1-5).

[8] Dr. Hashimi's completed questionnaire were submitted to the Appeals Council after the ALJ issued an unfavorable decision. (Tr. 12-28).

11

extreme temperatures, humidity, wetness, environmental pollutants, around dangerous equipment, or at unprotected heights (Tr. 56). Based upon this hypothetical, Ms. Berthaume opined that such a person could not perform Massey's past relevant work, but could perform other unskilled work, such as cashier, information clerk, or garment folder (Tr. 56-57).

     5.     The ALJ's Decision.

The ALJ found at step two that Massey's COPD and coronary artery disease were "severe" impairments, but determined at step three that Massey had not met his burden to show that his impairments or combination of impairments "meets or medically equals one of the listed impairments at 20 C.F.R. pt. 404, subpt. P, app. 1." (Tr. 18, Finding No. 4). The ALJ specifically found that:

> Pulmonary function testing does not yield results of a level of severity set forth in Medical Listing 3.02; moreover, no arterial blood gas studies have been performed, and there is thus no evidence of listing level pulmonary insufficiency (Exhibit 3F). The Claimant's coronary artery disease does not meet the criteria for disability set forth in Medical Listing 4.04 in that he does not experience symptoms resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living. The claimant did not produce any physician's reports, x-rays, or other appropriate evidence to support a finding that the impairments meets or equals [sic] a listing. There is no objective and credible medical finding based on medically acceptable clinical and laboratory techniques that show that a listing has been met or equaled.

(Tr. 19).

The ALJ also found that Massey's subjective complaints were not entirely credible. (Tr. 22). The ALJ noted that Massey "has stopped smoking cigarettes which reasonably improved pulmonary functioning [and] has not required extensive medical

intervention for the chronic obstructive pulmonary disease." (Tr. 20). In addition, Massey was found to be "able to climb stairs," which he chose to do rather than an elevator to reach the location of his hearing. (Tr. 20-21). The ALJ also found that Massey's medical records show nothing more than a mild pulmonary obstruction and that the coronary bypass grafting he underwent "relieved much of [his] symptoms." (Tr. 21). The ALJ also found that Massey's testimony concerning his daily activities was "consistent with the residual functional capacity" applied in this case, including his testimony that "he cooks and keeps his room clean[;] visits with friends, drives, and watchestelevision[;] [and] does not do much housework, not because he is unable, but because his sister, with whom he lives, likes a very clean house and does the cleaning herself." (Tr. 21-22).

The ALJ then determined that Massey had the residual functional capacity to perform a reduced range of light work (Tr. 19, Finding No. 5).[9] Although this residual functional capacity precluded Massey from performing his past relevant work (Tr. 23, Finding No. 6), the ALJ determined that there were other jobs that Massey could perform, such as cashier, information clerk, or garment folder (Tr. 23-24, Finding No. 10). As a result, the ALJ determined that Massey was not disabled as defined in the Act (Tr. 24, Finding No. 11).

---

[9] Specifically, the ALJ found that Plaintiff could perform less than a full range of light work, with the following restrictions: limited to walking for no more than 15 minutes at a time before needing to stop and rest, but with no restriction in his ability to stand or sit; no climbing, or working around unprotected heights or dangerous equipment; and no exposure to temperature extremes, humidity and wetness, or exposure to concentrated environmental pollutants (Tr. 19, Finding No. 5).

V.   Analysis.

1.   **ALJ's finding that Massey can perform less than a full range of light work is supported by substantial evidence**.

Massey argues, in sum, that the determination that he could perform less than a full range of light work is not supported by any medical opinion and the ALJ erred in rejecting the opinions of his treating physicians, namely Dr. Salter and Dr. Hashimi. (Doc. 15 at 2-3).  The Commissioner argues, in sum, that Massey "sought only sporadic medical treatment for his COPD during the relevant period," the treatment records fail to establish the existence of any significant complaints by Massey or functional limitations imposed by any physician, and the treatment received has only been conservative in nature.  (Doc. 17 at 6-7).

Controlling weight may be given to a treating physician's medical opinions if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).   The Eleventh Circuit has addressed this issue as follows:

> Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." Lewis, 125 F.3d at 1440; *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1241. With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id*. at 1240–41.

Winschel v. Commissioner of Social Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).  The Eleventh Circuit concludes that "'good cause' exists when the: (1) treating physician's

opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004)(*quoting* Lewis, *supra* 125 F.3d at 1440). An ALJ must clearly articulate his or her reasons for discounting a treating physician's opinion. *Id*.

The ALJ in this case identified good cause for discounting Dr. Salter's opinion that Massey is unable to work because of his COPD. The ALJ noted that Dr. Salter provides no opinion regarding Massey's actual functional capabilities or limitations but, instead, merely proffers a conclusory statement that Massey is disabled and unable to work. (Tr. 248, 262). *See* 20 C.F.R. § 416.927(d)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."); Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004)(good cause to not assign substantial or considerable weight to a treating physician's opinion exists when the opinion is conclusory)[10]. It is the Commissioner who is charged with the statutory duty to determine whether an individual is "disabled" or "unable to work" and a physician's

---

[10] Massey relies on Hillsman v. Bowen, 804 F.2d 1179, 1182 (11th Cir. 1986), for the proposition that "an ALJ may not reject the opinions of a treating physician by reaching his own medical conclusion after reviewing the medical records." (Doc. 15 at 2). Hillsman is, however, distinguishable in that the ALJ there rejected "the treating physician's explanation of the inability of the treatment he prescribed to control appellant's hypertension and diabetes" (804 F.2d at 1181) whereas the ALJ in the present case merely rejected a conclusory opinion that Massey could not work (Tr. 22, 243, 248, 262). Similarly, the ALJ in the present case did not question the medical diagnosis of either Dr. Salter regarding Massey's COPD or Dr. Hashimi regarding the coronary heart disease but, instead, merely rejected Dr. Salter's conclusory opinion that Massey could not work. Thus this case is also distinguishable from Marbury v. Sullivan, a case cited by Massey for the proposition that an "ALJ's decision not to credit seriously the medical diagnoses . . . cannot stand." (Doc. 15 at 3, *citing* Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992)(J. Johnson concurring).

15

opinion regarding that issue is not entitled to any special significance, particularly when, as here, it is not supported by any objective medical evidence. *See* 20 C.F.R. § 404.1527(e). The record in this case demonstrates that Massey suffers from COPD which has been described at various times as involving "mild obstruction" (Tr. 233, 234) or "moderate COPD" (Tr. 246) but also as being "better" on December 1, 2009 (Tr. 250). Massey's coronary artery disease required bypass surgery but this surgery relieved most of his symptoms as demonstrated by his follow-up appointment at which he reported no cardiovascular complaints, no chest pains and no other complaints. (Tr. 358). No limitation or restrictions have ever been placed on Massey beyond an order to quit smoking and to eat a proper, low cholesterol diet. *See* (Tr. 43-45, 209, 246, 250-52, 254, 291).

In addition, Dr. Salter's opinion is inconsistent with Massey's own testimony that he had no difficulty standing or sitting and could climb stairs as illustrated by his decision to walk up two flights of stairs to the hearing room rather than take the elevator. (Tr. 43, 46). Dr. Salter's opinion is also inconsistent with Massey's admission that he could occasionally lift up to 30 pounds, helps his sister cook and keeps his room clean. (Tr. 46-48). The only difference between Massey's assessment of his own functional capacity and the ALJ's assessment of his functional capacity was that the ALJ concluded that Massey could walk for up to 15 minutes at a time compared to the three to four minutes of walking Massey admitted he could accomplish. (Tr. 19, Finding No. 5; Tr. 46).

Massey's claim that Dr. Hashimi's opinion was rejected by the ALJ is without merit. The only limitation imposed on Massey by Dr. Hashimi was that he avoid

16

"strenuous physical activity" (Tr. 355), a limitation which was expressly acknowledged and given weight by the ALJ (Tr. 22). The residual functional capacity assessment adopted by the ALJ is clearly not inconsistent with the limitation imposed by Dr. Hashimi.

It is the ALJ's responsibility to assess a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1546 (The ALJ is responsible at the administrative level for assessing your residual functional capacity); Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2, 4 (the ALJ has the responsibility of determining claimant's residual functional capacity). Because a determination of a claimant's residual functional capacity is often "dispositive" of the claimant's disability status, a residual functional capacity assessment "***must be based on all of the relevant evidence in the case record***," not just the medical evidence. *See* 20 C.F.R. 404.1527(e)(2); SSR 96-5p, 1996 WL 374183, at *2; SSR 96-8p, 1996 WL 374184, at *5 (emphasis added); 20 C.F.R. 404.1545(a). *See also* SSR 85-16, 1985 WL 56855, at *2 ("In analyzing the evidence [and evaluating residual functional capacity], it is necessary to draw meaningful inferences . . . ."); SSR 96-8p, 1996 WL 374184, at *5 (An ALJ must evaluate medical and non-medical information in the record and then draw appropriate inferences and conclusions about the credibility of a claimant's statements); Enke v. Ribicoff, 197 F. Supp. 319, 324 (S.D. Fla. 1961) (reasonable inferences may be drawn from the record); SSR 96-5p, 1996 WL 374183, at *2 ("some issues [such as residual functional capacity assessments] are not medical issues regarding the nature and severity of an individual's impairment(s) but are

administrative findings" and "the regulations provide that the final responsibility for deciding issues such as these are reserved to the Commissioner.").

The ALJ in this case did not assert her own opinion in the place of Massey's treating physicians. The ALJ's assessment of Massey's residual functional capacity is consistent with all the evidence in this record, including not only Massey's own assessment of his functional capacity but the lack of any limitations or restrictions imposed by his treating physicians and the status of his health as reported by those physicians in their treatment notes. The ALJ committed no error with respect to Massey's residual functional capacity.

2.  **ALJ properly evaluated Massey's subjective complaints.**

Massey's contention that the ALJ provided no explanation for her finding that his subjective complaints were not entirely credible is simply not born out by the record. (Doc. 15 at 3, *citing* SSR 96-7p)[11]. The ALJ specifically noted:

- Although Massey complained of back pain, the evidence revealed that he had complained of back pain on only one occasion, has taken Tylenol for the pain and received no other treatment for a back impairment (Tr. 18);

- Although Massey claimed he had severe breathing problems due to COPD, diagnostic tests showed that it was only mild (Tr. 20; *see* Tr. 233-235, 246);

- Despite claims of a disabling heart impairment, post-surgical examinations have been normal (Tr. 20; *see* Tr. 333, 358);

---

[11] SSR 96-7p states:

> It is not sufficient for the adjudicator to make a single, conclusory statement the "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.

18

- Massey has failed to return for follow-up examination and/or treatment from his cardiologist, which indicates his symptoms and difficulties are not serious (Tr. 20);
- Despite claims of severe breathing problems, Massey has not required extensive medical intervention for his COPD (Tr. 20);

- Despite claims of severe breathing problems, Massey is able to climb stairs, and in fact climb stairs at his administrative hearing rather than using the elevator (Tr. 20-21; *see* Tr. 47);

- The objective medical evidence of record fail to support Massey's claims of complete disability, and he admitted that he has had no cardiovascular complaints or difficulties (Tr. 21; *see* Tr. 44); and

- Massey is able to cook and clean his room, visit with friends, drive, and watch television (Tr. 21-22; *see* Tr. 49-50).

The ALJ's decision contains "specific reasons" for the credibility determination in this case, which is supported by the evidence of record. The reasons given by the ALJ in this case are also sufficiently specific to make clear the weight given by the ALJ and her rationale. *See* Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995)(" If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so . . . or the implication must be so clear as to amount to a specific credibility finding."); Jones v. Dept. of H.H.S., 941 F.2d 1529, 1532 (11th Cir. 1991) (The ALJ may properly find subjective complaints not credible if he articulates reasons that are supported by the record.); Allen v. Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989) (The articulation of three reasons for rejection of a claimant's subjective complaints of pain was held to be sufficient to support the ALJ's finding that they were not credible.).

Although Massey does not agree with the ALJ's conclusions, he has failed to establish that the ALJ committed reversible error in this case. The ALJ properly determined Massey's residual functional capacity and, based on that capacity, a vocational expert testified that Massey could perform the jobs of cashier, information clerk, or garment folder. (Tr. 23-24, Finding No. 10; Tr. 56-67). *See* Welch v. Bowen, 854 F.2d 436, 440 (11th Cir. 1986)("A[vocational expert]'s testimony can establish that there are jobs that a person with claimant's determinable limits can perform."); Arend v. Astrue, 2012 WL 3264909, *6 (M.D. Ala. Aug. 10, 2012)("Substantial evidence supports the ALJ's reliance on the VE testimony ['that there were a significant number of jobs that a person with the limits identified by the ALJ could perform'] and the ALJ properly determined that Plaintiff was not disabled pursuant to 20 C.F.R. § 404.1520(g)."). Massey does not challenge this finding. Consequently, because Massey has been found capable of performing other work, he was not disabled under the Act. The ALJ properly evaluated Massey's subjective complaints.

## CONCLUSION

For the reasons set forth above, the Court concludes and it is therefore **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff's benefits be and is hereby **AFFIRMED**.

**DONE** this  28th  day of January, 2013.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON
UNITED STATES MAGISTRATE JUDGE**